## JAMES H. OLDHAM v. JOHN ARMSTRONG.

[Abstract Kentucky Law Reporter, Vol. 7—665, 674.]

**Construction of Terms of a Deed.**

Where the owner of real estate, about to marry a second time, or soon after such marriage, makes a deed to himself and wife of the real estate providing that his said wife and himself should have the land during their lives with remainder to their children, including a son of his wife by a former marriage; and years after the death of the husband, and after such child, and a child of the marriage, and their mother, each being over twenty-one years of age, have partitioned the land among themselves, it is too late for either of said owners or their heirs to put a different construction on such original marrige deed, and claim interests in proportions other than those claimed at the time of their partition of the land.

**Partition of Real Estate by Voluntary Deeds.**

Deeds executed between parties partitioning land, in which each owns an undivided interest, will not be set aside in the absence of fraud or mistake clearly shown, and not even then unless action be brought before precluded by the statute of limitations.

APPEAL FROM LOUISVILLE LAW AND EQUITY COURT.

March 11, 1886.

OPINION BY JUDGE PRYOR:

On the 14th day of February, 1884, this petition in equity was filed by James Oldham against the appellee, seeking to recover an interest in certain land lying in the county of Jefferson claimed to have been derived by him through his wife, Arabella, who had departed this life leaving him and several children surviving her. The children were all infants and all made defendants to the petition filed, and assert their claims to the land through their mother subject to the life estate of the father. Their answer is made a cross-

petition against the appellee. On the hearing below the petition and cross-petition were dismissed. William L. Oldham, when about to intermarry with Nancy Armstrong, executed a conveyance called in that writing a marriage settlement, by which he conveyed to the two, himself and wife, a tract of two hundred twenty-two acres of land, to be held by them during their lives and at the death of both "the land to go to their children, if any, and this includes the child of said Nancy named Andrew Armstrong." His prospective wife was a widow at the time, and the child, Andrew Armstrong, was by her first husband.

The marriage took place, and some years after the husband, Wm. Oldham, died. During this marriage there were born five children, two of whom died in infancy before their father, and two after his death. Mrs. Oldham is still living and has married one Thomas. She had only one child that lived to be of full age by Oldham, and that was Arabella, who married the appellant, James Oldham. This only child, Arabella, and Andrew Armstrong, the child by her first husband, claimed to own the entire tract of land that was conveyed by what was termed the marriage settlement made by Wm. Oldham and his wife at or about the time of the marriage. Arabella after her marriage with James Oldham, the appellant, left him and by a proper proceeding obtained a divorce and returned to live with her mother.

Shortly after she arrived at age and while living with her mother a partition was made of this land that was conveyed by her father, between her mother, her half-brother, Armstrong, and herself; each one was allotted an interest of one-third in fee and regular deeds of partition made. Her mother had by the terms of the original deed a life estate in the entire tract, and the allotment to her of one-third of the land in fee, she being at the time only forty-eight years of age, in lieu of her life estate in the entire tract, was not more than her just proportion. The parties were then of full age and all capable of contracting with each other and of executing valid conveyances to this land. Shortly after this partition of the land and the execution of these deeds, which was in September, 1876, Arabella returned to her husband.

The judgment of divorce was canceled and the parties again became husband and wife, and in November, 1877, they instituted an action in equity in the Louisville Chancery Court against the

mother, the half-brother, Armstrong, and the Arteburns, to whom the mother had conveyed, seeking to set aside the partition deeds on the grounds of fraud and undue influence on the part of the mother, and a want of knowledge on the part of Arabella as to her rights in the premises. She insisted then as the husband does now that the conveyance by her father to his wife (her mother) with remainder to their children vested each child as it came into being with an interest in the land, and the children all having died in infancy their interest passed to her, and that her half-brother was only entitled to an interest of one-sixth in the land.

On the part of Armstrong it is claimed that they took as a class, and all the children having died before the life-tenant, their mother, Arabella and himself became the absolute owners of the land, subject to their mother's life estate. The action in equity instituted in November, 1877, was for some reason dismissed without prejudice. Arabella after her return to her husband had several children, and after her death the husband instituted the present action in 1884, seeking to set aside the partition. deeds upon grounds similar to those set forth in the action that had been instituted in November, 1877. In this last petition it is alleged that the wife, Arabella, when she executed the partition deeds, was lacking in mental capacity and incapable of comprehending such a transaction; that she was influenced against her will by the superior will of her mother and compelled to convey away her estate to the half-brother without any consideration whatever; that she was not only incompetent to transact such business, but also labored under a mistake as to her legal rights.

All the allegations of the petitions are controverted and the statute of limitations of five years pleaded as to the fraud and mistake alleged in the petition. Much proof has been taken as to the mental condition of Arabella about the time the conveyances were executed, some of it conducing to show a mind bordering on insanity, and other testimony to the effect that she was a human of weak intellect and easily influenced by those in whom she confided. On the other hand there is much proof showing that while she was a woman of but little education she had sense enough to know her own interests, and this proof, coming from those who had known her from infancy, is entitled to great consideration.. Her testimony in the original action that was dismissed does not indicate a want

of mind, and after all these transactions took place she became the mother of the children who are suing for this land, except one; and her mental weakness seems to have impressed itself more upon strangers than with those interested in her welfare. We think the proof fails to show a want of intellect at the time these deeds were made or that any fraud was practiced upon her by the parties in interest; and if there was either fraud or mistake in the execution of these deeds we perceive no reason why the statute pleaded is not a bar to the recovery.

In one sense this is an action to recover the land in controversy, but in order to effect a recovery fraud or mistake must be shown in the execution of these deeds. With these deeds out of the way the title would be clear if the construction given the original deed made by Wm. Oldham, the father, by the appellant is the correct one. These deeds must be canceled on the one ground or the other, that of fraud or mistake, and therefore the fraud or mistake is the gist of the action, and the five years stated is properly pleaded. The conveyances are directly assailed for both fraud and mistake in their execution, and the filing of the petition in November, 1877, shows that both the husband and wife were in possession of the same facts now relied on to cancel the deed of the wife.

It is maintained by counsel for the appellant that the deed of the 3rd of July, 1854, by Wm. Oldham to his wife was in the nature of a marriage settlement, and without consideration is void. An effort has been made to establish the fact that this deed was made after the marriage, and the appellee says it was before the marriage. We think it immaterial whether the deed was made before or after that event. The land belonged to Wm. Oldham and he had the right to convey it to his wife for their joint lives, remainder to their children, and particularly after the marriage took place. It was a provision for the wife and children, and the executed conveyance by which he invests a child by his first wife with an equal interest with the other children is binding upon him. The deed also shows that it was in contemplation of the marriage and with a view of executing the intention and agreement of the two (husband and wife) that the conveyance was made. The register of the marriage is not conclusive of the date at which it took place, and in this case the proof is perfectly satisfactory that the marriage was consummated on the 4th of July, 1854, and as before said, viewing

this matter in either light, the date of the marriage can not affect the validity of the conveyance.

The construction of the conveyance on its terms, by which the child of Mrs. Wm. Oldham (now Thomas) by her first husband, Armstrong, was to hold or take as their own children would, under this deed, is not involved in the case; nor do we undertake to adjudge that there was a contingent interest only in the children. The parties themselves have placed a construction upon it, and carried that construction into effect by executing deeds from one to the other, and it is now too late to assail either deed upon the ground of fraud or mistake. Neither the intervening disability of the wife by reason of her coverture after the deeds were made nor the infancy of her children can stop the running of the statute. It results from this opinion that the judgment below must be *affirmed.*

*Rodman & Brown, Chenault & Colston, for appellant.*

*Russell & Helm, for appellees.*